SERAFIN v SERAFIN

Docket No. 58211. Argued June 8, 1977 (Calendar No. 10).—Decided
October 24, 1977.

Donald K. Serafin brought a complaint for divorce against Gloria
J. Serafin, who answered and brought a counterclaim for
divorce. Plaintiff's amended complaint denied that a child born
to the defendant during the parties' marriage was the plain-
tiff's child. The Wayne Circuit Court, Charles Kaufman, J.,
relying on Lord Mansfield's Rule, excluded from evidence testi-
mony of the plaintiff concerning nonaccess on the issue of the
child's paternity, and granted defendant a judgment of divorce
which ordered the plaintiff to pay child support and granted
custody of the child to the defendant. The Court of Appeals,
McGregor and N. J. Kaufman, JJ. (Danhof, P. J., dissenting),
reversed on the ground that excluding the plaintiff's testimony
disputing paternity violated his due process rights (Docket No.
23915). Defendant appeals. *Held:*

1. Lord Mansfield's Rule has outlived the policy reasons
initially advanced to support it and, finding none others persua-
sive, the Court holds that a husband and wife may testify
concerning nonaccess to each other on the issue of a child's
paternity. Further adherence to the rule cannot validly be
premised on the assertion that it operates to prevent increased
enrollment on public welfare lists. But even if it has such an
effect, and without reaching the due process arguments which
might be raised, the Court is not persuaded that the public
treasury should be protected by foisting upon a husband the
support of a child obviously not his own.

2. Neither does the rule protect family tranquility, which
might more readily be destroyed by forcing a husband to
support another man's child. The question of the child's pater-
nity usually is presented in court during or after a divorce
proceeding, after the quietude of the home has been disrupted.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 10 Am Jur 2d, Bastards §§ 33–36.
[4] No reference.
[5] 10 Am Jur 2d, Bastards § 144.
[6–9] 10 Am Jur 2d, Bastards § 150.

Public peace and respect for the law are enhanced, not by arbitrarily assigning the duty of support to the husband, but by allowing him to contest paternity by his best evidence. When a court voluntarily blindfolds itself to what every citizen can see, the public must justifiably question the administration of law to just that extent. The law has diminished adverse consequences once attendant upon the status of illegitimacy.

3. The child is also guarded by the still viable and strong, although rebuttable, presumption of legitimacy. In order to rebut that presumption, clear and convincing evidence must be given.

Justice Coleman, concurring, wrote separately to discuss the interests of the children who will be affected by the abolition of Lord Mansfield's Rule and to emphasize the continuing strength and validity of the presumption of legitimacy. Despite improvements in the legal status of children born out of wedlock, there still are social distinctions made between the legitimate and illegitimate child. The law protects all children born during marriage by the presumption of legitimacy: it speaks for the child whose future is at stake, even though he is not a party to the legal proceedings. It is one of the strongest presumptions in the law. The presumption will not fail unless common sense and reason are outraged by a holding that it abides. The phrase "clear and convincing evidence" draws its meaning from this background. Judges must be careful to apply this stringent standard scrupulously in order to protect the important societal objectives that are the basis for the presumption.

Affirmed.

67 Mich App 517; 241 NW2d 272 (1976) affirmed.

### OPINION OF THE COURT

1. BASTARDS—EVIDENCE—LORD MANSFIELD'S RULE.

The rule of evidence that parties to a marriage cannot testify of testimony concerning nonaccess when the issue is the paternity of a child born during their marriage, commonly known as Lord Mansfield's Rule, has outlived the policy reasons initially advanced to support it, and the Court, finding no other policy reasons persuasive, holds that a husband and wife may testify concerning nonaccess to each other on the issue of a child's paternity.

2. BASTARDS—EVIDENCE—LORD MANSFIELD'S RULE—PUBLIC POLICY.

Further adherence to Lord Mansfield's Rule cannot validly be premised on the assertion that it operates to prevent increased

enrollment on public welfare lists; but, even if it has such an effect, and without reaching the due process arguments which might be raised, the Court is not persuaded that the public treasury should be protected by foisting upon a husband the support of a child obviously not his own.

3. BASTARDS—EVIDENCE—LORD MANSFIELD'S RULE—PUBLIC POLICY.

Public peace and respect for the law are enhanced, not by arbitrarily assigning the duty of support to a man who is not the father of the child, but by allowing him to contest paternity by his own best evidence.

4. EVIDENCE—ADMISSIBILITY—PUBLIC POLICY—COMMON LAW.

A rule which absolutely excludes the best possible evidence in issue rather than allows it to be weighed by the trier of fact must necessarily lead to injustice; further, when a court voluntarily blindfolds itself to what every citizen can see, the public must justifiably question the administration of law to just that extent.

5. BASTARDS—SUBSTANTIVE RIGHTS—EQUAL PROTECTION.

The arbitrary distinction drawn between illegitimate and legitimate children as regards substantive rights has, for the most part, been invalidated by the United States Supreme Court as a violation of the Equal Protection Clause; statutes also now provide that an illegitimate child may inherit from its mother and a child may be legitimated by the parents and enjoy the same status of a child born in wedlock (US Const, Am XIV; MCL 702.81, 702.83; MSA 27.3178[151], 27.3178[153]).

6. BASTARDS—PRESUMPTIONS—LEGITIMACY.

A child born in wedlock is guarded by the still viable and strong, although rebuttable, presumption of legitimacy; in order to rebut the presumption, clear and convincing evidence must be given.

CONCURRING OPINION BY COLEMAN, J.

WILLIAMS, J.

7. BASTARDS—EVIDENCE—PRESUMPTIONS—LEGITIMACY.

*The law protects all children born during marriage by the presumption of legitimacy; it speaks for the child whose future is at stake, even though he is not a party to the legal proceedings.*

8. BASTARDS—EVIDENCE—PRESUMPTIONS—LEGITIMACY.

*The presumption of the legitimacy of a child born in wedlock is one of the strongest presumptions known to the law; the*

*presumption will not fail unless common sense and reason are outraged by a holding that it abides.*

9. Bastards—Evidence—Presumptions—Legitimacy.

*Judges must be careful to apply scrupulously the stringent standard of the presumption of legitimacy of a child born during marriage in order to protect the important societal objectives that are the basis of the presumption.*

*Milmet, Vecchio, Kennedy & Carnago, P. C.* (by *Richard F. Fellrath),* for plaintiff.

*James Thomson* for defendant.

Kavanagh, C. J. Plaintiff sued for divorce and defendant filed answer and counter-claim. Only two witnesses were called to testify, husband and wife. Plaintiff's attorney sought examination of plaintiff and cross-examination of defendant to show nonaccess of the husband to the wife to affect the legitimacy of the child born in wedlock.

Defendant's assertion that such evidence could not be considered was accepted and plaintiff was ordered to support the child born after the parties separated. On plaintiff's appeal to the Court of Appeals, that Court held that the refusal to consider plaintiff's testimony disputing paternity violated his due process rights. 67 Mich App 517; 241 NW2d 272 (1976).

We are satisfied that the Court of Appeals reached the correct decision so we affirm, although we do not reach the constitutional question.

The evidentiary rule applied by the trial court to bar consideration of plaintiff's testimony concerning nonaccess is commonly known as "Lord Mansfield's Rule". The rule was first uttered by Lord Mansfield in *Goodright v Moss,* 2 Cowp 591–594; 98 Eng Rep 1257–1258 (1777), an ejectment case:

"[T]he law of England is clear, that the declarations of a father or mother, cannot be admitted to bastardize the issue born after marriage.

\* \* \*

"As to the time of the birth, the father and mother are the most proper witnesses to prove it. But it is a rule, founded in decency, morality, and policy that they shall not be permitted to say after marriage, that they have had no connection, and therefore that the offspring is spurious."

This dictum was judicially incorporated into the law of this state in *Egbert v Greenwalt,* 44 Mich 245, 248; 6 NW 654; 38 Am Rep 260 (1880), where the court stated that "no judge or author has ever dissented" from Lord Mansfield's "strong approval" of it.

Since the decision in *Egbert,* however, a growing number of authors and judges have expressed dissatisfaction with the rule.[1] Among the most vociferous in his objection to the rule is Professor Wigmore, who attacks the rule as having no true foundation in English case precedent at the time it was stated. 7 Wigmore on Evidence (3d ed), §§ 2063, 2064. Wigmore also condemns subsequent efforts to justify and explain the rule as "mere pharisaical after-thoughts", and he concludes that there are no perceivable policy reasons to maintain it. Wigmore, supra, § 2064.

---

[1] The following contain criticisms of Lord Mansfield's rule: Mc-Cormick on Evidence (2d ed), § 67; Bell, *Competency of a Husband and Wife to Testify as to Non-access,* 21 Temp L Q 217 (1947); Note, *The "Lord Mansfield Rule" as to "Bastardizing the Issue",* 3 Md L Rev 79 (1938). *See* Judge Levin's opinion in *Maxwell v Maxwell,* 15 Mich App 607, 610, fn 4; 167 NW2d 114 (1969), for a more extensive citation.

Cases rejecting the rule are: *Commonwealth ex rel Savruk v Derby,* 235 Pa Super Ct 560; 344 A2d 624 (1975); *In re L,* 499 SW2d 490 (Mo, 1973); *Ventresco v Bushey,* 159 Me 241; 191 A2d 104 (1963); *Vasquez v Esquibel,* 141 Colo 5; 346 P2d 293 (1959); *Loudon v Loudon,* 114 NJ Eq 242; 168 A 840 (1933); *Moore v Smith,* 178 Miss 383; 172 So 317 (1937).

We agree that the rule has outlived the policy reasons initially advanced to support it and, finding none others persuasive, we hold that a husband and wife may testify concerning nonaccess to each other.[2]

The policy considerations underlying the rule have never been totally clear in this state, but the court in *In re Wright's Estate,* 237 Mich 375, 381; 211 NW 746 (1927), gave the following summary:

> "The Mansfield rule, undoubtedly, lessens the number of public charges which would have to be cared for and supported by the public. It works for the peace and quiet of the family. It works for the peace of the community and society generally.
>
> * * *
>
> "In reviewing the many reasons given for the rule by its author, text-book writers and courts, we think the prime reason for the rule is as stated—that it is against public policy to permit parents to give testimony bastardizing their issue."

We are satisfied that further adherence to Lord Mansfield's Rule cannot validly be premised on the assertion that it operates to prevent increased enrollment on public welfare lists. But even assuming that it has such an effect, and apart from the due process objections that might be raised against such a policy, we say with the Supreme Court of Maine: "We are not persuaded that the public treasury should be protected by foisting upon a husband the support of a child obviously

---

[2] Among the cases which will be overruled, at least in part, by our holding are: *People v Bedell,* 342 Mich 398; 70 NW2d 808 (1955); *Bassil v Ford Motor Co,* 278 Mich 173; 270 NW 258 (1936); *In re Wright's Estate,* 237 Mich 375; 211 NW 746 (1927); *Yanoff v Yanoff,* 237 Mich 383; 211 NW 735 (1927); *King v Peninsular Portland Cement Co,* 216 Mich 335; 185 NW 858 (1921); *Rabeke v Baer,* 115 Mich 328; 73 NW 242 (1897); *Egbert v Greenwalt,* 44 Mich 245; 6 NW 654 (1880).

not his own." *Ventresco v Bushey,* 159 Me 241, 249; 191 A2d 104, 108 (1963).

We are likewise no longer convinced that refusal to admit and consider the parent's testimony of nonaccess, "works for the peace and quiet of the family". *Wright, supra.*

As the court in *Moore v Smith,* 178 Miss 383, 392–393; 172 So 317, 320 (1937), pointed out, familial tranquility might be more readily destroyed by forcing a husband to support a child that in fact is not his, while protecting his wife and her paramour who engaged in extramarital activity in gross violation of the marital relation.

Additionally, the question of whether the husband is the father of a child often is not presented in court until support is sought during or after a divorce proceeding. At either point, attempts to guard the quietude of the home would seem to be somewhat late.

Neither is the peace of the general society fostered by continued adherence to Lord Mansfield's rule. Rather, we are convinced, it is best fostered by lifting the veil of incompetency imposed upon a husband and wife by the rule. In our view the public peace and respect for the law are enhanced, not by arbitrarily assigning the duty of support to a man who is not the father of the child, but by allowing him to contest paternity by his best evidence. *Moore, supra,* 393–394.

The Texas Court of Civil Appeals expressed our viewpoint in *Davis v Davis,* 507 SW2d 841, 847 (Tex Civ App, 1974), *rev'd on other grounds,* 521 SW2d 603 (1975), where it stated:

"If the function of a court is to find the truth of a matter so that justice might be done, then a rule which absolutely excludes the best possible evidence of a matter in issue rather than allow it to be weighed by

the trier of fact must necessarily lead to injustice. Further, when a court voluntarily blindfolds itself to what every citizen can see, the public must justifiably question the administration of law to just that extent."

As noted in the Court of Appeals opinion in this case, 67 Mich App 517, 525–526; 241 NW2d 272 (1976), the United States Supreme Court has recently done much under the Equal Protection Clause of the Fourteenth Amendment to invalidate the arbitrary distinction drawn between illegitimate and legitimate children as regards substantive rights. See, also, Anno: *Discrimination on Basis of Illegitimacy as Denial of Constitutional Rights,* 38 ALR3d 613.

Our state law also has diminished the adverse consequences once attendant upon the status of illegitimacy. Michigan statutes now provide that an illegitimate may inherit from his or her mother, MCLA 702.81; MSA 27.3178(151). An illegitimate may be legitimated by the parents even absent their intermarriage, and if legitimated, the child then has "the identical status, rights and duties of a child born in lawful wedlock". MCLA 702.83; MSA 27.3178(153).

The child is also guarded by the still viable and strong, though rebuttable, presumption of legitimacy. *Maxwell v Maxwell,* 15 Mich App 607, 617; 167 NW2d 114 (1969). We hold that, in order to rebut the presumption, clear and convincing evidence must be given.

We are satisfied that this policy best protects the interests of all concerned.

Affirmed, costs to plaintiff.

WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, C. J.

COLEMAN, J. *(concurring).* My colleagues focus their attention primarily on the valid and important interests of husbands who deny parenthood in divorce cases such as this, and they conclude that Lord Mansfield's Rule[1] should be abolished. I understand the reasoning behind this departure from long established precedent and, despite adherence to the rule by a majority of our sister states,[2] I agree that a change is required. I write separately to highlight the interests of the children who will be affected by the rule's abolition and to emphasize the continuing strength and validity of the presumption of legitimacy.

It is true that the legal status of children born out of wedlock has improved significantly since the Eighteenth Century when Lord Mansfield first announced what became known as his rule. It is also true that should the husband not be required to pay child support, public assistance benefits may be available for the child's minimum financial needs, usually in his or her own home.

Despite these enlightened advances, there still are, unfortunately, social distinctions made between the legitimate and illegitimate child which continue to stigmatize the illegitimate child and scar his or her psychological development. We need no learned treatise to know that many children branded as illegitimate suffer painful and sometimes crippling emotional damage at the hands of cruel or thoughtless peers and adults. The word "bastard" has not yet lost its sting to the children against whom it is too often applied. Moreover, feelings of parental rejection and aban-

---

[1] Lord Mansfield's Rule prohibited the husband and wife from testifying about nonaccess to prove the husband's lack of paternity in cases involving a child born during the marriage.

[2] McCormick on Evidence (2d ed), § 67; 49 ALR3d 212; 10 Am Jur 2d, Bastards, § 10, *et seq.*

donment are realities that often continue to plague the illegitimate child. Related neglect and even abuse are not uncommon. It is no accident that many of these children strike back by committing antisocial or criminal acts.

For these reasons, among others, the law long has protected all children born during marriage by the presumption of legitimacy. The presumption speaks for the child whose future is at stake, even though he or she is not a party to the legal proceedings. It is distinct from Lord Mansfield's Rule and is not affected by today's decision. My colleagues recognize this and briefly comment on the strength of the presumption, stating that it can only be rebutted by "clear and convincing" evidence. I wish to emphasize how strong the presumption is and clarify the meaning of the words "clear and convincing".[3]

The presumption of legitimacy is one of the strongest presumptions known to the law. When Michigan first adopted Lord Mansfield's Rule, in the case of *Egbert v Greenwalt,* 44 Mich 245; 6 NW 654 (1880), the Court also discussed the presumption and the quantum of proof required to overcome it. The quantum was variously described by the Court as "facts and circumstances of such cogency as to render belief necessary", "cogent facts and circumstances" and "evidence * * * beyond all reasonable doubt".[4] Then in *People v Case,* 171 Mich 282, 284; 137 NW 55 (1912), the Court said:

---

[3] I would prefer to use the words "beyond a reasonable doubt" instead of "clear and convincing", if for no other reason than the meaning of the former is generally understood and applied daily by trial court judges. However, whichever words are used, the history of the presumption of legitimacy shows that the quantum of proof required to overcome it is extraordinarily high.

[4] *Egbert, supra,* 249–250.

Opinion by COLEMAN, J.

"The rule that a child born in lawful wedlock will be presumed to be legitimate is as old as the common law. It is one of the strongest presumptions in the law. The ancient rule made the presumption conclusive, if the husband was within the four seas. The modern one permits the presumption to be overcome, but only upon proof which is very convincing."

Other jurisdictions have described the presumption in similarly strong terms. Chief Judge Cardozo spoke for the high court of New York. After stating that the quantum of proof required to overcome the presumption had been variously described as "clear and convincing" evidence, "strong and irresistible" evidence and "proof beyond all reasonable doubt", he concluded that:

"What is meant by these pronouncements, however differently phrased, is this and nothing more, that the presumption will not fail unless common sense and reason are outraged by a holding that it abides."[5]

Courts which have rejected Lord Mansfield's Rule have, at the same time, reiterated the strength of the presumption and the great quantum of evidence required to overcome it.[6]

The phrase "clear and convincing evidence" used by my colleagues draws its meaning from this background. It obviously does not mean that a mere preponderance of the evidence or a modicum of additional evidentiary weight will be sufficient

---

[5] *In the Matter of the Estate of Findlay, Deceased,* 253 NY 1, 8; 170 NE 471, 473 (1930).

[6] *See,* for example *Ventresco v Bushey,* 159 Me 241; 191 A2d 104 (1963), where the court abolished Lord Mansfield's Rule but required proof beyond a reasonable doubt in order to overcome the presumption of legitimacy. *See also Maxwell v Maxwell,* 15 Mich App 607; 167 NW2d 114 (1969), where the Court suggested that if the rule were to be abolished, a standard of proof beyond a reasonable doubt would be appropriate.

to overcome the presumption of legitimacy. Much more than that is necessary. The proof of illegitimacy must be "very convincing",[7] "of such cogency as to render belief necessary"[8] and "beyond all reasonable doubt"[9] before a judge can rule that a child is illegitimate. Judges must be careful to apply this stringent standard scrupulously, regardless of their personal view of the evidence, in order to protect the important societal objectives that are the basis for the presumption.

In short, even after today's decision abolishing Lord Mansfield's Rule, a very strong presumption of legitimacy will continue to protect the otherwise defenseless child. The husband who seeks to establish that he is not the father of a child born during the marriage still faces a formidable task.

Two other minor aspects of this case deserve some attention. First, the trial judge refused to order a blood test for the purpose of determining whether Mr. Serafin could be the father of the child. Such an order should be granted on remand if Mrs. Serafin continues to allege that Mr. Serafin is the father and if such an order is requested. Second, Mr. Serafin's military duty records and evidence indicating the weather conditions during the alleged time of access were not admitted at the first trial. These items, if otherwise admissible, should be admitted on remand.

WILLIAMS, J., concurred with COLEMAN, J.

---

[7] *Case, supra,* 284.

[8] *Egbert, supra,* 249.

[9] *Id,* 250.