SPIELMAKER v LEE

Docket No. 165759. Submitted February 2, 1994, at Grand Rapids.
    Decided May 2, 1994, at 9:45 A.M.

Michael A. Spielmaker brought an action in the Kent Circuit
    Court against Emily E. Lee, seeking under the Paternity Act,
    MCL 722.711 et seq.; MSA 25.491 et seq., to establish that he
    was the father of a child conceived by Lee while unmarried and
    born after she became married. Lee moved for summary dispo-
    sition, arguing that Spielmaker lacked standing to sue under
    the Paternity Act. The court, George S. Buth, J., denied the
    motion. Lee appealed by leave granted.

    The Court of Appeals held:

    A putative father may maintain an action under the Pater-
    nity Act only if the child is born out of wedlock. MCL
    722.714(6); MSA 25.494(6). The act defines "child born out of
    wedlock" as a child begotten and born to a woman who was not
    married from the conception to the date of birth of the child, or
    a child that a court has determined to be a child born or
    conceived during a marriage but not the issue of that marriage.
    MCL 722.711(a); MSA 25.491(a). In order for a child to be
    deemed to have been born out of wedlock under the first
    definition, the mother must have been unmarried for the entire
    time from conception to birth.

    In this case, because Lee was married before the child was
    born and a court has not previously declared that the child did
    not issue from Emily Lee's marriage to Richard J. Lee, Jr., the
    child was not born out of wedlock for purposes of the Paternity
    Act and Spielmaker has no standing to sue under the act.

    Reversed.

    J. T. HAMMOND, J., concurring, stated concern over the possi-
    bility that a paternity action later could be brought under the
    second definition of "child born out of wedlock" against Spiel-
    maker by one or both of the Lees or the Department of Social
    Services after Spielmaker, as a result of the decision in this

REFERENCES

Am Jur 2d, Bastards §§ 87, 88.
See ALR Index under Legitimacy of Children.

case, has been deprived of input into the child's upbringing during her formative years.

PARENT AND CHILD — PATERNITY ACT — PUTATIVE FATHERS — STANDING.

A putative father may maintain an action under the Paternity Act only if the child is born to a mother who was not married for the entire time from conception to birth or if a court has previously determined that, although the child was conceived or born during a marriage, the child is not an issue of the marriage (MCL 722.711[a], 722.714[6]; MSA 25.491[a], 25.494[6]).

*Craig K. Van Ess,* for the plaintiff.

*Terry E. Heiss,* for the defendant.

Before: HOLBROOK, JR., P.J., and SAWYER and J. T. HAMMOND,* JJ.

SAWYER, J. Defendant appeals by leave granted from the trial court's order denying her motion for summary disposition in this paternity action. We reverse.

This dispute concerns the paternity of defendant's daughter, Tessa Ann Lee, who was born on March 1, 1993. Apparently, plaintiff and defendant were involved in a relationship at the time of the conception of the child. However, they broke off their relationship before the birth of the child. Defendant, in fact, married another individual, Richard James Lee, Jr., on January 8, 1993, approximately two months before the birth of the child. Lee's name appears on the child's birth certificate as the father. Plaintiff thereafter filed this action, seeking a determination of paternity. Defendant filed a motion for summary disposition, arguing that plaintiff has no standing under the Paternity Act, MCL 722.711 *et seq.*; MSA 25.491 *et seq.,* to seek a determination of paternity. The

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

trial court denied the motion for summary disposition, and this Court thereafter granted defendant leave to appeal.

At issue here is the effect of the Supreme Court's decision in *Girard v Wagenmaker,* 437 Mich 231; 470 NW2d 372 (1991). In *Girard,* the Court held that a putative father has no standing under the Paternity Act to seek a determination of paternity where the mother of the child was married to another individual when the child was born and there has been no prior determination by a court that the child is not issue of the marriage. The only significant factual difference between the case at bar and *Girard* is that in *Girard* the mother was married both at the time of conception and birth, while in the case at bar defendant was unmarried at the time of conception but was married at the time of birth. Plaintiff argues, and the trial court agreed, that this distinction is sufficient to distinguish the case from *Girard.* Defendant argues that it is not. We reluctantly agree with defendant.

A putative father may maintain an action under the Paternity Act only if the child is born out of wedlock. *Girard, supra* at 243; MCL 722.714(6); MSA 25.494(6). The Paternity Act further defines a child born out of wedlock as follows:

> "Child born out of wedlock" means a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child which the court has determined to be a child born or conceived during a marriage but not the issue of that marriage. [MCL 722.711(a); MSA 25.491(a).]

In *Girard,* the Court focused on the second definition of "born out of wedlock," namely where a court has previously determined that a child born

to a married woman is not issue of the marriage. *Girard* concluded that such a determination had to have been made before a putative father could maintain an action under the Paternity Act to seek a determination of paternity. Thus, in *Girard,* because no court had previously determined that the child was not the issue of the Wagenmaker marriage, Girard was not permitted to maintain an action under the Paternity Act. Rather, Girard would have to wait until such time as a court had made that determination, such as in connection with a divorce action.

In the case at bar, we are called upon to interpret the first definition of a child born out of wedlock, namely a child who is "begotten and born to a woman who was not married from the conception to the date of birth of the child." In interpreting the second definition of "born out of wedlock," the Court in *Girard* found it necessary to pay careful attention to the grammar employed in the statute. *Girard, supra* at 242. Similarly, the proper grammatical construction plays a role in interpreting the first definition of "born out of wedlock."

First, there is the prepositional phrase "from the conception to the date of birth of the child." The question becomes, of course, whether that prepositional phrase merely modifies the word "married" or the phrase "not married." If we interpret it to merely modify the word "married," as plaintiff urges, then a child would be deemed to have been born out of wedlock if the child's mother was not continuously married from the time of conception to the time of birth. That is, under such a construction, the word "not" must be seen as modifying the entire phrase "married from the conception to the date of birth of the child" and, therefore, a child would be deemed to have been born out of wedlock if that negative condition exists,

i.e., the mother was not "married *from* the conception *to* the date of birth of the child" (emphasis added). On the other hand, if the positive condition exists, that the mother was "married from the conception to the date of birth of the child," then the child would be deemed to be born in wedlock. The effect of this construction would produce a favorable ruling to plaintiff, but would also serve to bastardize all children born to parents who were unmarried at the time of conception, but who married before the birth of the child. We doubt that that was the intent of the Legislature, and we must interpret statutes so as to effect legislative intent. *Girard, supra* at 238.

The second possible interpretation of the definition is that the prepositional phrase "from the conception to the date of birth of the child" modifies the term "not married." If this interpretation is adopted, then it is necessary for the mother to have remained unmarried the entire time from conception to birth in order for the child to be deemed born out of wedlock. Thus, under this interpretation, a child would be automatically legitimized if the mother was married at the time of conception, though became unmarried by the time of birth because of death or divorce, or if the mother was unmarried at the time of conception, but subsequently became married before the birth.[1] We believe this was the intent of the Legislature in drafting the Paternity Act.

This intent is revealed in two particular aspects of the definition as drafted. First, the second portion of the definition allows a court to determine that a child "born *or* conceived during a marriage" (emphasis added) is not issue of the marriage. If

---

[1] Unless, of course, a court has determined the child not to be issue of the marriage pursuant to the second definition of a child born out of wedlock.

the Legislature did not intend to automatically legitimize the birth of a child where the mother was either married at the time of conception or birth, but not both, then it would need only authorize a court to determine whether a child is issue of the marriage if the child was both born *and* conceived during the marriage. That is, by employing the disjunctive "or" rather than the conjunctive "and" in the phrase "a child which the court has determined to be a child born or conceived during the marriage but not the issue of that marriage," the Legislature implies that a child who was *either* conceived *or* born during a marriage, but not necessarily both, is the legitimate issue of the marriage unless a court has determined otherwise.[2] Thus, if a court may determine whether a child is issue of the marriage where the child was either conceived or born during the course of the marriage, that implies that, in order for a child to be considered born out of wedlock without such a judicial determination, the mother must not have been married at either the time of conception or the time of birth. For this to be read consistently with the first definition of "born out of wedlock," it is necessary to interpret the phrase "from the conception to the date of birth of the child" as modifying the phrase "not married" rather than merely modifying "married."

The second reason for concluding that the Legislature intended this definition is the wording of the statute before its amendment in 1980. Before the amendment of the statute by 1980 PA 54, the definition read, "[a] child born out of wedlock is a child begotten and born to any woman who was

---

[2] And, as discussed above, *Girard* addresses the need for a court to have made the determination that the child is not the issue of the marriage before the putative father brings an action under the Paternity Act.

unmarried from the conception to the date of birth of the child." Thus, the 1980 amendment added the second definition contained in the current statute—where the court has determined the child not to be issue of the marriage—and changed the word "unmarried" to "not married" in what is now the first definition of born out of wedlock.[3]

The original use of the word "unmarried" only allows one interpretation. Namely, the prepositional phrase "from the conception to the date of birth of the child" must necessarily modify the word "unmarried" and, therefore, requires that the mother have remained unmarried for that entire period in order for the child to be deemed born out of wedlock. While the Legislature's change in wording from "unmarried" to "not married" in the 1980 amendment is curious inasmuch as it changes a definition from one that clearly allows only one interpretation to one that ambiguously allows two interpretations, we see no evidence suggesting any intent by the Legislature to change the effect of the definition. Rather, we believe it most likely that the Legislature intended the prepositional phrase to modify the term "not married" just as it had previously modified the word "unmarried." Had the Legislature intended to completely change the definition of "born out of wedlock" from requiring the mother to be unmarried during the entire gestation to requiring the mother to be unmarried only during part of the gestation, we think they would have spoken in more explicit terms.[4]

[3] We should note that the original version in 1980 merely made reference to the court determining that a child born during a marriage was not issue of the marriage and the words "or conceived" were added by amendment under 1986 PA 107.

[4] Indeed, the nature of the 1980 amendment must be put in context. It followed shortly after the Supreme Court's decision in *Serafin v Serafin*, 401 Mich 629; 258 NW2d 461 (1977). In *Serafin*, the Supreme

In sum, we agree that the Legislature's use of the construction "from . . . to" implies a condition that must be met for the continuous period from the beginning to the end of the stated period, in this case gestation. However, we further conclude that the prepositional phrase employed in this case modifies the term "not married" rather than merely the word "married." Thus, for a child to be deemed born out of wedlock under the first definition of that phrase contained in the statute, it is necessary that the mother have been "not married" for the entire gestation, or "from the conception to the date of birth of the child." Because in the case at bar defendant was not, in fact, "not married" for the entire gestational period, or "from the conception to the date of birth of the child," the child was not born out of wedlock. Accordingly, pursuant to the provisions of MCL 722.714(6); MSA 25.494(6) and the holding in *Girard, supra,* we hold that plaintiff lacks standing to maintain an action under the Paternity Act.

We do note that a considerable portion of plaintiff's brief discussed the Supreme Court's holding in *Syrkowski v Appleyard,* 420 Mich 367; 362 NW2d 211 (1985), a surrogate-parenting case. Were *Syrkowski* the last word from the Supreme Court on this issue, we might possibly agree with plaintiff's position. However, it is quite clear that the Court in *Girard* has limited *Syrkowski* to its peculiar facts involving surrogate parenting. *Girard, supra* at 247-248.

Finally, we would be remiss in our duties if we

---

Court abrogated Lord Mansfield's Rule, which irrebuttably presumed that a child born to a married woman was issue of the marriage. Following the decision in *Serafin,* the presumption became rebuttable, rather than irrebuttable. Thus, the 1980 amendment of the Paternity Act served to allow paternity actions in cases where a husband had successfully rebutted the presumption that a child born during the marriage was issue of the marriage.

did not explain our dislike for the result reached in this case. While we have done that which we are obligated to do, namely interpret a statute and apply the statute as written and in light of the precedent set by the Supreme Court, we do not pretend that justice has been served in this matter. Indeed, we believe that an observation by the Supreme Court in rejecting Lord Mansfield's Rule in *Serafin v Serafin,* 401 Mich 629, 635-636; 258 NW2d 461 (1977), is equally applicable to the case at bar:

> The Texas Court of Civil Appeals expressed our viewpoint in *Davis v Davis,* 507 SW2d 841, 847 (Tex Civ App, 1974), rev'd on other grounds, 521 SW2d 603 (1975), where it stated:
> "If the function of a court is to find the truth of a matter so that justice might be done, then a rule which absolutely excludes the best possible evidence of a matter in issue rather than allow it to be weighed by the trier of fact must necessarily lead to injustice. Further, when a court voluntarily blindfolds itself to what every citizen can see, the public must justifiably question the administration of law to just that extent."

It is indeed ironic that, at a time when much criticism is leveled at "deadbeat dads" who fail to assume responsibility for their children and there is a great emphasis placed on the need for fathers to become more involved in the lives of their children, we are faced with a father who wishes to do precisely that yet we are obligated to deny him the opportunity. Indeed, we are somewhat surprised that we were not called upon to address the issue whether the statute denies equal protection inasmuch as defendant may initiate the appropriate proceedings to have plaintiff determined to be the father of her child at any time she or her

husband chooses, while plaintiff may not initiate such proceedings until such time as defendant or her husband choose to allow him to do so by having initiated their own proceeding to determine that the child is not issue of the marriage. However, we are only called upon to interpret the meaning of the statute, not its validity, and we have done so accordingly. We would, however, invite the Legislature to modify the statute and future litigants to question the validity of the statute.

For the above reasons, we conclude that the trial court erred in determining that plaintiff has standing under the Paternity Act to maintain this litigation. Rather, we hold that, under the terms of the statute, a putative father may maintain an action under the Paternity Act only if the child is born out of wedlock and a child is deemed to have been born out of wedlock only if the mother was unmarried for the entire time from conception to birth or if a court has previously determined that the child was not issue of a marriage. Because neither condition applies to the case at bar, the child was not born out of wedlock and plaintiff does not have standing to maintain this action.

Reversed. No costs, a question of public importance being involved.

HOLBROOK, JR., P.J., concurred.

J. T. HAMMOND, J., *(concurring).* I concur entirely in everything said in the foregoing opinion.

I do, however, have a serious concern about an issue that was not raised, briefed, argued, or decided in *Girard v Wagenmaker,* 437 Mich 231; 470 NW2d 372 (1991). I am concerned with what happens if the Lee marriage goes on the rocks, as is statistically more likely than not, and one or

another (or both) of the parties, in the course of the divorce action, brings a claim under *Serafin v Serafin*, 401 Mich 629; 258 NW2d 461 (1977), that Mr. Lee is not the father of Tessa Ann Lee. Suppose further that it is ultimately determined that Mr. Lee indeed is not the father of this child and therefore that this child, though born during the marriage of Mr. and Mrs. Lee, is not a product of that marriage. Should that occur, either Mrs. Lee or Mr. Spielmaker or the Department of Social Services, if the child is a welfare recipient, may bring a paternity action.

If this were to occur, and Mr. Spielmaker is adjudicated the father, it would mean that Mr. Spielmaker might be utterly deprived of the opportunity to have any input into the upbringing of Tessa during her crucial formative years, but still be saddled with the obligation to support a child whose character is then fully formed and to whom Mr. Spielmaker is a total stranger.

In the meantime, if Mr. Lee is not the biological father and, more importantly, believes that he is not, he may be or become a father in name only, without any emotional involvement, and though we think that children do not recognize this, they do, and the damage at some point can become irreversible.

Counsel for Mrs. Lee, during oral argument before the Court of Appeals and in response to a question from the bench, expressed the opinion that Mr. and Mrs. Lee would be estopped to deny paternity of Tessa Ann Lee by Mr. Lee. I wish I could be that certain.

If it were possible to require Mr. and Mrs. Lee to expressly abjure any future claim that Mr. Lee is not the father of this child, I would feel much more at ease. The problem is that in this action Mr. Spielmaker tried to obtain a ruling that he

was the father of this child—and now has lost on the standing issue—but, at the same time, there is not a judgment stating that he is *not* the father of the child. We are thus left with the pious assumption that Mr. Lee is the father, but arguably leave the matter open to be revisited any time either Mr. or Mrs. Lee decide to change their minds. This lack of finality is a rotten deal for Mr. Spielmaker, but he is not entitled to an awful lot of sympathy. What bothers my conscience more is that it is a rotten deal for Tessa.