*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BENJAMIN BROWN,

Plaintiff-Appellant,

v

MICHELLE BROWN,

Defendant-Appellee.

FOR PUBLICATION
April 9, 2020
9:00 a.m.

No. 350576
Monroe Circuit Court
Family Division
LC No. 19-040077-DM

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

RONAYNE KRAUSE, P.J.

In this child custody dispute, plaintiff appeals as of right the trial court's order modifying the parties' prior custody arrangement to grant sole legal and physical custody of the parties' five minor children to defendant. We affirm.

## I. BACKGROUND

During the course of their marriage, the parties had eight children, five of whom are still minors. In the parties' 2014 consent judgment of divorce, plaintiff was awarded primary physical custody of the children, and the parties were awarded joint legal custody of the children. The consent judgment contained a definition of "joint legal custody" enumerating various rights and obligations of the parties. In 2016, the parties entered a stipulated order purporting to grant plaintiff sole legal and physical custody of the children, permitting defendant to move to Ohio, and reserving to defendant a specified amount of parenting time and "reasonable parental rights, defined as spelled out on attached sheet." The attached sheet enumerated a list of rights and obligations that was precisely identical to the definition of "joint legal custody" in the consent judgment of divorce, including punctuation and formatting. The parties' last custody order was entered in 2016 by stipulation and granted plaintiff sole legal and physical custody of the children. Defendant moved to Ohio around the same time, and plaintiff and the children began living with plaintiff's parents near Dundee, Michigan.

In 2018, defendant filed a motion *in propria persona* for change of custody. Defendant raised numerous concerns about the children's care in plaintiff's custody, including unsafe and cramped housing conditions, failure to provide the children with basic sanitation and clothing

needs, failure to provide adequate supervision, neglect of the children's emotional needs, denigration of defendant, and interference with defendant's visitation time and ability to communicate with the children. Plaintiff generally denied defendant's assertions, or contended that some of them were one-time aberrant occurrences. In 2019, represented by counsel, defendant filed another motion for change of custody. She further asserted that there had been a change of circumstances since the 2016 stipulated order because plaintiff had moved and was living in an unsafe residence; plaintiff enrolled the children in an unaccredited school without consulting defendant; plaintiff threatened to block defendant entirely from seeing the children if she attempted to have any say in the children's welfare; and defendant had obtained stable employment, a stable relationship, stable housing, and ties to her community. She further cited plaintiff's history of perpetrating domestic violence and that all of the children had expressed a desire to be in defendant's custody.

The trial court held a thorough hearing, taking detailed testimony from the parties, two of the adult children, various witnesses familiar with the family, and in-camera interviews with all five of the minor children regarding their preferences. The trial court then granted defendant's motion for change of custody, awarding defendant sole legal and physical custody of the minor children. This appeal followed.

## II. STANDARDS OF REVIEW

In matters involving child custody, " 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017), quoting MCL 722.28. This Court will not interfere with the trial court's factual findings "unless the facts clearly preponderate in the opposite direction." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. *Lieberman v Orr*, 319 Mich App 68, 77; 900 NW2d 130 (2017). In child custody cases specifically, an "abuse of discretion" retains the historic standard under which the trial court's decision must be "palpably and grossly violative of fact and logic." *Moote v Moote*, ___ Mich App ___, ___, ___ n 2; ___ NW2d ___ (2019) (Docket No. 346527, slip op at p 2) (quotation omitted). Clear legal error occurs when the trial court "incorrectly chooses, interprets, or applies the law." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). This Court reviews the trial court's determination regarding a child's best interests for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments. *Moote*, ___ Mich App at ___ (slip op at pp 2-3).

## III. THRESHOLD FOR MODIFYING CUSTODY

Plaintiff first argues that the trial court erred by finding that defendant established the threshold requirement for reconsidering the parties' previous custody arrangement. We disagree.

## A. APPLICABLE LEGAL STANDARDS

"As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman*, 319 Mich App at 81. "[T]o establish 'proper cause' necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court." *Vodvarka v Grasmeyer*, 259 Mich App 499, 512; 675 NW2d 847 (2003). "The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being." *Id*.

In arguing that the trial court erred by finding appropriate grounds to consider modifying custody, plaintiff first focuses on the sufficiency and weight of the allegations contained in defendant's written motion to change custody. Plaintiff's argument is unpersuasive because the trial court's finding of proper cause was not strictly based on the allegations in defendant's motion. The court also considered other matters that arose at the evidentiary hearing, namely, the domestic violence taking place in plaintiff's household and the historic living conditions related to the children's housing, medical, and material needs while in plaintiff's care. Plaintiff contends that the trial court erred by making findings concerning these matters that went against the great weight of the evidence. We disagree.

## B. TRIAL COURT'S FACTUAL FINDINGS

The trial court determined that plaintiff's use of corporal punishment as a disciplinary method constituted domestic violence. Plaintiff maintains that he always acted in good faith and on the basis of his religious beliefs regarding the propriety of corporal punishment. We find his argument unavailing. However sacrosanct parental rights may be, they do not extend to abusing one's children. See *Corrie v Corrie*, 42 Mich 509, 510; 4 NW 213 (1880); *In re Gould*, 174 Mich 663, 669-670; 140 NW 1013 (1913). The state's interest in protecting children from harm outweighs any religious beliefs regarding the propriety of corporal punishment. *Dep't of Social Services v Emmanual Baptist Preschool*, 434 Mich 380, 388; 455 NW2d 1 (1990). It has long been established that a parent may not administer excessive physical discipline, or physical discipline that actually harms a child, no matter what the parent might subjectively believe. *People v Green*, 155 Mich 524, 529-533; 119 NW 1087 (1909). We conclude that the trial court did not err by characterizing plaintiff's use of corporal punishment as domestic violence in this case.

Domestic violence is a factor that must be explicitly considered in custody disputes. MCL 722.23(k). The Child Custody Act, MCL 722.21 *et seq*., does not provide its own definition of domestic violence. However, the Domestic Violence Prevention and Treatment Act, MCL 400.1501 *et seq*, defines "domestic violence" as:

> the occurrence of any of the following acts by a person that is not an act of self-defense:
>
> (i) Causing or attempting to cause physical or mental harm to a family or household member.

(ii) Placing a family or household member in fear of physical or mental harm.

(iii) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(iv) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 400.1501(d).]

A "family or household member" may include a spouse, former spouse, present or former dating or sexual partner, present or former "individual" co-resident, present or former relative by marriage, other parent of the individual's child, or minor child of any of the above. MCL 400.1501(e).

We recognize that it is generally improper to construe a statute by reference to a definition provided in an unrelated statute. *Coalition Protecting Auto No-Fault v Michigan Catastrophic Claims Ass'n*, 317 Mich App 1, 19; 894 NW2d 758 (2016). Rather, the meaning of undefined words should usually be ascertained by reference to a common dictionary, *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005), or a legal dictionary if the term has a peculiar meaning in the law, *Safdar v Aziz*, 327 Mich App 252, 262; 933 NW2d 708 (2019). In *Merriam-Webster's Collegiate Dictionary* (11th ed), domestic violence is defined as "the inflicting of physical injury by one family or household member on another; *also*: a repeated or habitual pattern of such behavior." *Black's Law Dictionary* (11th ed) defines the term as "[v]iolence between members of a household or between romantic or sexual partners; an assault or other violent act committed by one member of a household on another or by a person on the person's romantic or sexual partner." Thus, the dictionary definitions of "domestic violence" closely match the definition provided in MCL 400.1501. The definition of "domestic violence" in MCL 400.1501 also is clearly consistent with the Child Custody Act's overriding goal of promoting the best interests of the children involved in custody disputes. See *Lieberman*, 319 Mich App at 78. We therefore hold that "domestic violence" as used by MCL 722.23(k) includes "domestic violence" as defined in MCL 400.1501.[1]

---

[1] The instant matter is not criminal in nature, so we are not presented with any question of whether the criminal offense of assault under MCL 780.81(a), which defines certain offenses in the same terms as does the Child Custody act (e.g., MCL 780.81(a)(2) refers to "an individual who assaults his or her former spouse"), is *in pari materia* with that Act. We hold only that conduct that constitutes "domestic violence" within the meaning of the Domestic Violence Prevention and Treatment Act necessarily constitutes "domestic violence" within the meaning of the Child Custody Act. It is generally improper to apply a definition from one statutory scheme to another by rote. See *Coalition Protecting Auto No-Fault v Michigan Catastrophic Claims Ass'n*, 317 Mich App 1, 19; 894 NW2d 758 (2016). Furthermore, there already exist specific animal cruelty criminal statutes. See MCL 750.49-750.70a. If multiple penal statutes are potentially applicable, prosecutors may charge a defendant with both a more-general and a more-specific offense only if

Consequently, the trial court's conclusion that plaintiff's use of corporal punishment constituted domestic violence was not against the great weight of the evidence. It was undisputed that plaintiff's standard response to "willful disobedience" involved discussing with the child the reason he or she was being punished, prayer, spanking the child on the buttocks approximately five times with a PVC pipe, and expressions of love at the end of the ritual. Plaintiff commonly used sufficient force to leave red marks on the children's skin for the rest of the day, and his spankings once left a child with bruises. The parties' eldest daughter indicated that she could sometimes hear "the swing of the paddle" and "the cries of the kids" from another room. Even if plaintiff was acting on the basis of his religious beliefs and without malicious intent, the fact remains that his corporal punishment involved the infliction of injury on members of his household. We further observe that "domestic violence" unambiguously includes the infliction of mental harm, and it is obvious that a combination of cruelty and serious physical harm with expressions of love would further inflict mental harm upon any reasonable person.

In further support of its finding of proper cause, the trial court cited plaintiff's abusive treatment of family pets. There was evidence that plaintiff threw a family dog against the wall for chewing on shoes, kneed another dog in the chest for stealing food, and shot an airsoft pistol at a cat that was on the counter. Plaintiff admitted the truth of the latter two allegations. We hold that the trial court did not err.

We first emphasize that although it is likely criminal and certainly reprehensible, harmful or abusive conduct toward an animal is not *per se* domestic violence. A pet cannot be a spouse, MCL 400.1501(e)(*i*), in any legal jurisdiction of which we are aware. The word "individual" used in MCL 400.1501(e)(*ii*) to (*vii*) is not defined by statute, so we again consult a dictionary. Common usage of the word "individual" is typically limited to human beings, not any other kind of entity. See, e.g., *Merriam-Webster's Collegiate Dictionary* (11th ed). Therefore, a pet obviously cannot satisfy any of the possibilities under MCL 400.1501(e) under which it would be a "family or household member" within the meaning of the Domestic Violence Prevention and Treatment Act or the Child Custody Act. Thus, a pet cannot be a victim of "domestic violence" under either Act.

Nevertheless, it is well-known that many people feel that their pets are part of their family, form deep and lasting emotional bonds with their pets, and feel tremendous personal responsibility for their pets. In most cases, this would be all the more true for a child. Harmful or abusive conduct toward an animal is not *per se* domestic violence, for the reasons already noted. However, intentionally harming an animal with whom a child (a "person" under the Act) has a significant emotional bond could constitute "engaging in activity toward a family or household member," i.e., toward the child, "that would cause a reasonable person" (again, the child) "to feel terrorized,

---

the two offenses are actually distinct; if the statutes prohibit the same conduct, prosecutors must charge under the most-specific statute. *People v LaRose*, 87 Mich App 298, 302-304; 274 NW2d 45 (1978); *People v Ford*, 417 Mich 66, 77-83; 331 NW2d 878 (1982). Likewise, in the context of personal protection orders, causing or threatening harm to an animal is already an explicit basis for obtaining a PPO. MCL 600.2950(1)(k). Our opinion would therefore be not only dicta, but substantively superfluous in the criminal or personal protection order contexts.

frightened, intimidated, threatened, harassed, or molested," MCL 400.1501(d)(*iv*), or, in other words, would constitute domestic abuse directed at the child. Directing such activity toward a minor child (a "family member" under the Act, MCL 400.1501(e)(*vii*)), "for the purpose of compelling obedience by such a minor child" often, if not invariably, is also an act of intimidation and would place such a minor child in reasonable fear of mental harm, MCL 400.1501(d)(*i*), and thus could constitute domestic abuse under the Act as well. Thus, harmful or abusive conduct toward a pet can constitute domestic violence under either MCL 400.1501(d)(*i*) or MCL 400.1501(d)(*iv*), if done for the purpose of distressing or coercing a person emotionally bonded to that pet. The resolution of that issue in a given case will turn on the trial court's factual findings regarding the reason or reasons why someone engaged in particular actions with regard to an animal, and the nature of the bond between a child and the animal at issue.[2] In any event, such misconduct is at least relevant to plaintiff's creation of an atmosphere harmful to the children's well-being. See *Vodvarka*, 259 Mich App at 512. For either reason, the trial court here properly relied upon plaintiff's abusive treatment of the family pets in support of its finding of proper cause.

The trial court also found proper cause to revisit the custody order on the basis of the children's living conditions while in plaintiff's care. Again, the trial court's findings were not against the great weight of the evidence. There was evidence that plaintiff did not always ensure that the children received routine medical care while in his custody, that he was not diligent in following up on the specific medical needs of particular children, that the girls did not always have access to appropriate feminine hygiene products, and that he encouraged one of his daughters to seek religious guidance upon learning that she was self-harming but refused any kind of professional mental health treatment. Plaintiff also made the decision to enroll the children in a church-based school for several years. We do not in any way mean to suggest that a religious educational institution is improper *per se*, but this particular school was not accredited and provided little guidance to the children in their academic studies. The children were required to teach themselves from packets of information and were primarily supervised by volunteer "monitors" who were not always prepared to respond to the students' questions. There was evidence that some of the children were not well-suited for such an independent style of learning, and both of the parties' children who reached the age of 18 while attending the school dropped out without completing the program.[3] Even if they had completed the program, they would not receive a legally valid diploma. The most recent child to leave the school was seriously behind in several core subjects. Such abject neglect of the children's educational needs and failure to provide them with basic necessities for survival in the real world is inherently harmful to them.

## C. CONCLUSION

---

[2] In other words, whether harmful or abusive conduct toward a pet constitutes "domestic violence" within the meaning of the Domestic Violence Prevention and Treatment Act and the Child Custody Act turns greatly upon the actor exploiting a child-victim's emotional bond with the pet and, in effect, using harm or threats to the pet as an instrumentality directed at a child, who thereby becomes a victim of domestic violence for purposes of the Child Custody Act.

[3] The parties' eldest son never attended the church-based school, but he also dropped out of school at the age of 18 while in plaintiff's care.

The trial court's findings regarding domestic violence and the deficiencies in the care they received from plaintiff were well-supported by the record. Furthermore, those matters related to several best-interest factors, including Factors (c) (capacity and disposition to provide food, clothing, medical care, and other material needs), (h) (home, school, and community record), and (k) (domestic violence). Plaintiff's neglect and mistreatment of the children posed a significant risk to each child's mental health, physical well-being, and very ability to survive in the future. Accordingly, the trial court did not err by finding proper cause to revisit the parties' custody arrangement.

## IV. BEST-INTEREST ANALYSIS

Plaintiff also argues that the trial court erred in its analysis of the statutory best-interest factors. We agree that the trial court erred with respect to one factor, but we conclude that the trial court's ultimate decision to grant defendant's motion for change of custody was not an abuse of discretion.

## A. APPLICABLE LEGAL STANDARDS

The parties do not dispute that the children had an established custodial environment, MCL 722.21(1)(c), with plaintiff. Therefore, changing that custodial environment by granting defendant sole legal and physical custody of the children requires defendant to prove by clear and convincing evidence that the modification would be in the children's best interests. *Foskett v Foskett*, 247 Mich App 1, 5-6; 634 NW2d 363 (2001); *Griffin v Griffin*, 323 Mich App 110, 119; 916 NW2d 292 (2018). A trial court's analysis of a child's best interests is guided by the statutory factors set forth in MCL 722.23. *Griffin*, 323 Mich App at 114-115. "Clear and convincing evidence" is a less stringent evidentiary standard than "beyond a reasonable doubt," but it is the most demanding civil standard and requires the evidence to be significantly more persuasive than a mere preponderance. *In re Martin*, 450 Mich 204, 225-228; 538 NW2d 399 (1995); see also *Serafin v Serafin*, 401 Mich 629, 638-640; 258 NW2d 461 (1977) (COLEMAN, J., concurring).

## B. BEST-INTEREST FACTORS

Factor (a) considers the "love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). Plaintiff does not challenge the trial court's finding that this factor favored both parties equally. We agree. The witnesses generally agreed that both parties had loving bonds with the minor children, even if defendant's relationship with some of the children was strained at times after the divorce. The trial court's finding regarding this factor was not against the great weight of the evidence.

Factor (b) considers the "capacity and disposition of the parties involved to give the children love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court found that the parties had an equal capacity and disposition to continue raising the children in their religion, but that Factor (b) favored defendant as to the children's education.

Regarding the parties' religious guidance, it is undisputed that plaintiff promoted the children's religious development and would continue to do so in the future. Defendant testified

that she regularly visited the children on the weekends, but she did not take them on community outings on Sundays because she understood that they had church-related activities. When the children were in her care, she took them to her local church every Sunday. Defendant indicated that her church conformed to the same general doctrines that the children were accustomed to, and she ensured that the children had access, in her home and at church, to the same version of the King James Bible that they had grown up with. The trial court's finding that the parties had an equal capacity for providing the children with religious guidance was not against the great weight of the evidence.

Regarding the children's education, we have already discussed the severe and debilitating deficiencies in plaintiff's provision of education to the children. In contrast, defendant planned to enroll the children in a highly rated public school district and had already made arrangements with the school district to accommodate the children's delayed start for the new academic year in the event she was awarded physical custody. Defendant was also helping the parties' eldest daughter to fill in the gaps left by plaintiff in her education so she could obtain a GED and pursue a college education. In light of the foregoing, the trial court's determination that Factor (b) favored defendant was not against the great weight of the evidence.

Factor (c) considers the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court found that although plaintiff *could* have provided for the children, he nevertheless failed to do so; particularly regarding clothing, medical care, and sanitation and hygiene. There was some dispute whether the children's occasional use of clothing that was in poor condition or seasonally inappropriate was by their own choice. Nevertheless, one of the children developed sores or rashes because she did not have a properly fitted bra. Plaintiff indicated that he attempted to order a new bra for that child, but someone else ultimately helped the child get appropriate undergarments. A friend of the family also testified that she had to purchase feminine hygiene products for the girls because they had inadequate supplies in plaintiff's home. Plaintiff did not have a regular family doctor for the children and had not taken them for routine examinations in over a year. Plaintiff failed to consistently follow up on speech therapy and vision care for one of the children or pursue timely orthodontic care for another child.

In contrast, although defendant had little opportunity to address the children's medical needs while they remained primarily in plaintiff's physical custody, she arranged sports physicals for the children while they stayed with her during these proceedings, enrolled the daughter who had a history of self-harming in professional counseling, selected a family physician, dentist, and optometrist for future care, and was prepared to add the children to her health insurance policy if she received custody. Defendant also purchased clothing and other items for the children during their stay, sent them school supplies in the past, and had a history of paying child support. The trial court's finding that Factor (c) favored defendant was not against the great weight of the evidence.

Factor (d) considers the "length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court recognized that the children had stability with plaintiff in the sense that he had been their primary caregiver since the parties' divorce. It concluded that Factor (d) still weighed in favor of defendant

because plaintiff's care had not been satisfactory. The plain language of MCL 722.23(d) includes the desirability of maintaining the existing environment within its scope. Thus, in light of the trial court's conclusion that plaintiff failed to create an acceptable environment for the children, the longevity of his care did not cause the weight of this factor to tip in his favor. Furthermore, the children had spent the last three years living with plaintiff in his father's home in Dundee, but plaintiff relocated to Gaylord, Michigan, while defendant's motion was pending. Although the children had previously lived with plaintiff in the same home in Gaylord, the move would require that they change their school and church yet again, which substantially decreased the overall stability they had with plaintiff. The trial court's finding that Factor (d) favored defendant was not against the great weight of the evidence.

Factor (e) considers the "permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court found that this factor favored defendant because plaintiff's home involved a setting in which domestic violence existed, while plaintiff provided a more loving and affirming setting that was free from domestic violence. The trial court's concern is appropriate, as we have discussed. However, the acceptability of the custodial home or homes is not pertinent to this factor. *Fletcher v Fletcher*, 447 Mich 871, 884-885; 526 NW2d 889 (1994). It is "legal error for the trial court to consider . . . acceptability, rather than permanence, of the custodial unit" when making findings under Factor (e). *Id*. at 885. The stability, health, or safety of the environment provided by a party is considered in other factors. Here, the children had consistently resided with plaintiff and his wife as a family unit since the parties' divorce. In contrast, before defendant's 2018 motion, the children only visited defendant a few times a year and physically resided with her only a few days at a time. Thus, there was less of a sense of permanence in defendant's prospective household, physically or as a family unit. The trial court's determination that Factor (e) weighed in favor of defendant was contrary to the great weight of the evidence.

Factor (f) considers the "moral fitness of the parties involved." MCL 722.23(f). A parent's "questionable conduct is relevant to [this factor] only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*." *Fletcher*, 447 Mich at 887. The trial court found that Factor (f) favored defendant because of the "domestic violence and psychological violence" that existed in plaintiff's home. The trial court determined that plaintiff's use of corporal punishment crossed the line between effective discipline and wrongful conduct, and his mistreatment of the family pets perpetuated a fearful environment to compel good behavior. For the reasons already explained, the court's finding was not against the great weight of the evidence. Further, because plaintiff's tendency toward violent behavior was a significant factor in how he functioned as a parent, the trial court did not err by considering these issues under Factor (f). See *id*. at 887 n 6 (identifying abusive behavior as relevant to moral fitness).

Plaintiff relies on testimony indicating that defendant began drinking and smoking after the divorce, contrary to the way the children had been raised. This testimony does not undermine the trial court's finding regarding this factor. First, defendant explained that she had never smoked in front of her minor children, did not keep alcohol in the house, and only consumed a single alcoholic beverage when she drank in the children's presence. There was no evidence that these activities affected how she functioned as a parent, so they are not relevant to Factor (f). *Id*. at 887. Secondly, although smoking and drinking may not be healthy behaviors to model for a child, it would not be against the great weight of the evidence to conclude that violent and cruel behavior

is a far more serious moral failing. The trial court did not err in finding that Factor (f) favors defendant.

Factor (g) considers the "mental and physical health of the parties involved." MCL 722.23(g). The trial court found that this factor slightly favored plaintiff on the basis of defendant's physical health. Neither party challenges the trial court's finding regarding Factor (g).

Factor (h) considers the "home, school, and community record of the child." MCL 722.23(h). The trial court found that Factor (h) favored plaintiff as to the children's home record because of his long-standing role as primary caregiver. However, this factor favored defendant as to schooling because the children did not receive an appropriate education under plaintiff's care. Insofar as we can discern, plaintiff does not actually challenge the trial court's findings under Factor (h), and he seemingly agrees that Factor (h) favors both parties. Rather, he argues that the trial court's finding that Factor (h) favored him as to the home and community record is inconsistent with its findings in favor of defendant under other factors. We disagree. Although plaintiff's home environment was undesirable, plaintiff nevertheless raised the children in a strong community setting, with substantial support from family and members of their church, an aspect of the children's lives not considered in the same manner under other factors. The trial court's findings were neither against the great weight of the evidence nor internally inconsistent.

Factor (i) considers the "reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(i). The trial court determined that the minor children, the youngest of whom was then nine years old, were old enough to express a preference. The trial court questioned the children in a separate, confidential record, and the trial court's comments on the record indicate that its interviews were thorough. To the extent that the children expressed a preference, the trial court took their preferences into account. The parties do not challenge the trial court's treatment of this factor.

Factor (j) considers the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). Plaintiff argues that the trial court "found for [defendant] and did not elaborate on this issue." However, the trial court clearly explained its reasoning that Factor (j) favored defendant because plaintiff refused to allow defendant to exercise overnight weekend parenting time in her home while she was "living in sin" with her fiancé. The trial court acknowledged that plaintiff's position was rooted in his religious beliefs, but found that plaintiff's decision interfered with the relationship between defendant and the children, even if that was not his intention. The trial court further reasoned that because of plaintiff's firm-set beliefs and values, he was not fully able to encourage the children's relationship with defendant. Indeed, plaintiff never allowed the children to stay with defendant overnight outside of the specific holiday parenting time set forth in the parties' previous custody order. The order also granted defendant overnight parenting time during 16 weekends each year and "reasonable parental rights" identical to the parties' previously agreed-upon definition of "joint legal custody." Nevertheless, plaintiff readily admitted that he prevented that parenting time from taking place by refusing to reach mutually agreeable dates. Whatever plaintiff's motives, the trial court's findings regarding Factor (j) were fully supported by the record and were not against the great weight of the evidence.

Factor (k) considers "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). The trial court found that this factor weighed substantially in favor of defendant because of plaintiff's violent behavior. We have already extensively discussed the issue of plaintiff's domestic violence. The trial court's finding that this factor favored defendant was not against the great weight of the evidence.

Finally, Factor (l) considers "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." Plaintiff offers a confusing, conclusory, and unexplained statement that the trial court erred in finding this factor to favor defendant. We cannot find in the record any ruling or statement by the trial court regarding Factor (l), and plaintiff does not suggest any "other factor" that the trial court should have considered relevant.[4] The trial court therefore cannot have erred under Factor (l).

## C. CONCLUSION

In sum, with the exception of Factor (e), the trial court did not commit clear legal error or make findings against the great weight of the evidence. Nevertheless, the trial court's error regarding Factor (e) was harmless and does not require reversal, because in all other respects the remaining best-interest factors overwhelmingly supported defendant's motion for change of custody. Therefore, the trial court's ultimate decision to award defendant sole legal and physical custody of the children was not an abuse of discretion. See *Maier v Maier*, 311 Mich App 218, 227; 874 NW2d 725 (2015) (finding error regarding two factors harmless where several other factors supported the trial court's decision). The trial court engaged in a thoughtful and detailed analysis of the facts and properly granted defendant's motion.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

---

[4] Plaintiff presents a perfunctory argument concerning the trial court's failure to consider a recommendation offered by a Friend of the Court investigator who, in pertinent part, proposed that plaintiff retain primary physical custody of the children. Plaintiff cites no authority for his implicit suggestion that the trial court must consider an investigator's recommendation. We therefore deem plaintiff's unsupported argument abandoned. *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 619; 692 NW2d 388 (2004). Furthermore, we would consider it inappropriate for the trial court to abdicate its own responsibility to determine the children's best interests.